UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| FLAVIO MORENO,<br><br>                Plaintiff,<br><br>v.<br><br>NEV. DEPT. CORR., *et al.*,<br><br>                Defendants. | Case No. 3:18-cv-00137-MMD-CLB<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff Flavio Moreno, ("Moreno"), against Defendants Romeo Aranas ("Aranas") and Kim Adamson ("Adamson") (collectively referred to as "Defendants"). Currently pending before the court is Defendants' motion for summary judgment. (ECF Nos. 29, 31).[2] Moreno responded (ECF No. 37), and Defendants replied (ECF No. 38). Having thoroughly reviewed the record and papers, the court recommends Defendants' motion for summary judgment (ECF No. 29) be granted.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

Moreno is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Lovelock Correctional Center ("LCC"), where the events of this case allegedly occurred. (ECF No. 5 at 1). On March 29, 2018, proceeding *pro se*, Moreno submitted a civil rights complaint pursuant to 42 U.S.C. § 1983, which he signed and verified, under penalty of perjury, acknowledging the facts and information contained in the complaint were "true and correct." (*Id.* at 10). Pursuant to 28 U.S.C. § 1915A(a), the court screened the complaint on April 25, 2019, and issued a screening

---

[1]     This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]     ECF No. 31 consists of sealed exhibits filed in support of the motion for summary judgment.

order. (ECF No. 4.) The court allowed Moreno to proceed on the portion of Counts I and II, Eighth Amendment deliberate indifference to serious medical needs and First Amendment retaliation claims against both Defendants, and further allowed Moreno to assert a parallel state action for retaliation against both Defendants under the Nevada Constitution Article I, § 9. (ECF No. 4).[3]

### A. Counts I and II – Deliberate Indifference and Retaliation Claims

Counts I and II of Moreno's complaint allege the following: In 2013, (while housed at High Desert Prison, "HDSP"), Moreno slipped on a wet floor and fell, injuring his lower back. (ECF No. 5 at 3-5.) The injury was allegedly caused by a lack of "slippery when wet" signage. (*Id.*)

Moreno's complaint alleges he has, since roughly August 2017, experienced significant limited mobility and increased severe pain due to the fall. (*Id.*) Moreno alleges Defendants purposefully hid his medical diagnoses from him, leaving him in severe pain unnecessarily, simply to avoid the costs of surgery. (*Id.*) Moreno also alleges Defendants knew the care given to him would not improve his condition but was provided to penalize him. (*Id.*) Moreno further alleges Defendants left him in severe pain unnecessarily as punishment for escalating medical costs related to his continued treatment. (*Id.*) Moreover, Moreno alleges Defendants did so specifically for the purpose of reprisal against Moreno for redressing his grievances. (*Id.*)

Moreno seeks the following remedies: (1) surgical repair of his damaged back at no cost to him; (2) post-surgery placement in the LCC general population, with a bottom bunk; (3) cessation of reprisals against him for medical costs and redress of grievances;

---

[3] Moreno also named NDOC as a defendant in his complaint. (*See* ECF No. 5.) However, the court dismissed NDOC, with prejudice, pursuant to Eleventh Amendment immunity. (*See* ECF No. 4 at 3, n. 1). Further, Moreno's complaint alleged violations of 42 U.S.C. § 1997d, 42 U.S.C. § 13981 and 42 U.S.C. § 12131(1)-(2). (*See* ECF No. 5.) However, the court dismissed those claims, with prejudice, because amendment would be futile. (*See* ECF No. 4 at 8.) Moreno further alleged violations of the Nevada Constitution Article I, § 10 and NRS §§ 209.131, 209.151, and 200.571. (*See* ECF No. 5.) The court also dismissed those claims. (*See* ECF No. 4 at 8.)

2

(4) $1,000,000.00 in damages per Defendant; and (5) costs, fees, and interest from each Defendant. (*Id.* at 9).

B.     **Undisputed Facts Common to Moreno's Claims**

The following facts are undisputed by both parties: On October 10, 2010, NDOC created a Medical Master Problem List for Moreno indicating he had suffered from chronic lower back pain since 1994. (ECF No. 31-1 at 2). On February 4, 2013, NDOC created an Unusual Occurrence Report that indicated Moreno, then housed at HDSP, sustained a work-related injury while lifting eggs. (ECF No. 31-2 at 2; *see* ECF No. 31-4 at 16; *see also* ECF No. 31-3 at 11). Moreno claimed he suffered the injury in his lower back area. (ECF No. 37 at 44). Moreno received prescriptions for Flexeril and Naproxen to treat his lower back injury. (ECF No. 31-4 at 14). On April 9, 2013, Moreno submitted a medical kite claiming he re-injured his back at work during the previous week while carrying a crate. (ECF No. 29-1 at 2).

Over two years later, on June 13, 2015, Moreno submitted a medical kite stating that, although he has had back problems for years, he began suffering severe back pain approximately one month prior to submitting the kite. (ECF No. 37 at 43). On June 23, 2015, Moreno was given 200mg Ibuprofen tablets, and on July 1, 2015, Moreno was given 600mg Ibuprofen tablets. (ECF No. 31-4 at 13). On December 29, 2015, Moreno submitted a medical kite requesting medication and a lower bunk to ameliorate his chronic back pain. (ECF No. 37 at 49). NDOC scheduled Moreno an appointment with Defendant Adamson. *Id.*

On January 5, 2016, Moreno was treated by Defendant Adamson for the first time. (*See* ECF No. 31-3 at 15; *see also* ECF No. 31-4 at 13). Adamson noted Moreno exhibited "manipulative drug seeking behavior," stating Moreno "really wants . . . Narcotics." (ECF No. 31-3 at 15). Nonetheless, Adamson prescribed Naproxen and Baclofen for Moreno to help alleviate Moreno's chronic back pain and neuropathy. (*Id.*) Additionally, Moreno received care three times between January 5, 2016 and August 4, 2016. (*See* ECF No. 31-4 at 12-13). On August 4, 2016, Tahoe Carson Radiology ("TCR") performed lumbar

3

spine x-rays on Moreno at LCC.  (ECF No. 31-5 at 7; *see* ECF No. 31-4 at 12).  The x-rays found that Moreno suffered from mild dextroconvex scoliosis in his L1 vertebra and disc space narrowing, mild endplate spurring, and facet arthrosis throughout his L5 and L5-S1 vertebrae.  (*Id.*)

On August 18, 2016, Moreno requested an appointment for continued severe pain, alleging the doctor "said he would put me on the following week appointment (sic) for cortizone (sic) shots."  (ECF No. 37 at 48).  NDOC responded by scheduling an appointment for Moreno early the following week, "per Dr. Adamson." (*Id.*)  On August 22, 2016, Adamson prescribed Moreno Naproxen and 800mg Motrin and treated Moreno with Kenalog and Lidocaine injections.  (ECF No. 31-4 at 12).

On May 30, 2017, Moreno again received Kenalog and Lidocaine injections and Adamson requested an MRI for Moreno and prescribed him 800 mg Motrin tablets and analgesic balm (ECF No. 31-4 at 10, 11, and 15).  On August 8, 2017, Moreno obtained a radiology report from Humboldt General Hospital.  (ECF No. 31-5 at 5.)  The examining physician noted "[m]oderate spinal stenosis at L4-L5 with narrowing of the lateral recesses and possible nerve root impingement."  (*Id.*)

On August 15, 2017, Adamson treated Moreno for his chronic back pain, noting Moreno needed to see a back specialist because "meds don't help."  (ECF No. 31-3 at 12).  Adamson further noted Moreno's x-rays showed spondylosis and dextroscoliosis and that Moreno's MRI showed nerve root compression and spinal stenosis.  (*Id.*)  Adamson prescribed Moreno 20mg Baclofen and 800mg Motrin and noted Moreno needed an "ortho or neurosurgical" consultation.  (ECF No. 31-4 at 11).

On August 24, 2017, Moreno filed a NDOC administrative claim form demanding $150,000 for events occurring at HDSP and LCC from 2013 "to present day."  (ECF No. 29-4 at 15).  Moreno further attached a seven-page informal grievance form to his demand.  (*Id.* at 9-14; ECF No. 5 at 19).  Moreno's grievance alleged NDOC had failed to treat the injuries Moreno purportedly sustained while working for NDOC during his incarceration.  (*Id.* at 9.)  Moreno's grievance further alleged his medical care at HDSP and LCC was

constitutionally inadequate.  (*Id.* at 9-14; ECF No. 5 at 19).  Moreno demanded (1) cost-free surgical repair; (2) bottom bunk placement until surgical repair is performed; (3) effective pain relief management; (4) cessation of reprisal against Moreno for medical costs and redress of grievance; and (5) $150,000.00.  (ECF No. 29-4 at 11).  NDOC responded by denying Moreno's grievance.  (ECF No. 29-4 at 8).

On September 26, 2017, Moreno submitted a medical kite requesting information on the status of his surgery approval.  (ECF No. 37 at 47).  NDOC responded that Moreno was already approved to see a neurosurgeon and arrangements were still being made.  (*Id.*)  On October 4, 2017, Moreno was given 60mg Toradol for his pain.  (ECF No. 31-3 at 12).  On October 10, 2017, Moreno filed a first level grievance form requesting the "same claim same remedy" as his informal grievance.  (ECF No. 29-4 at 6).  NDOC responded by denying Moreno's grievance.  (*Id.*)

On October 17, 2017, Moreno received additional spine x-rays from TCR.  (ECF No. 31-5 at 6).  The x-rays found mild spondylosis and disc space loss among the L4 and L5 vertebrae and moderate spondylosis and endplate remodeling at the L5-S1 vertebra.  (*Id.*)  On November 27, 2017, the Sierra Neurosurgery Group ("SNG") examined Moreno and conducted an MRI.  (ECF No. 31-6 at 2-4).  SNG recommended an L4-5 steroid injection to see if the injection could help Moreno manage his pain.  (*Id.* at 3).  Further, SNG recommended that if the injection failed to provide long-lasting relief, Moreno "may benefit from an L4/5 laminectomy."  (*Id.*)  On December 12, 2017, Moreno submitted a second level grievance form, completing the formal grievance process.  (ECF No. 29-4 at 2, 4). On January 30, 2018, Defendant Aranas responded by denying Moreno's grievance.  (*Id.* at 3).

On January 31, 2018, Moreno was seen by NDOC care providers to discuss his latest lab results and treatment plan.  (ECF No. 31-3 at 2).  At that meeting, Moreno threatened to sue NDOC.  (*Id.*)  On February 27, 2018, Moreno sent Inmate Institutional Correspondence to then LCC Warden Renee Baker ("Baker"), alleging he had not received injections or surgery for three and one-half months.  (ECF No. 37 at 52).  On

March 16, 2018, Baker responded that medical was "attempting to find a doctor to do the injections." (*Id.*)  By the time Baker responded, Moreno had already been seen by medical ten days earlier.  (*See* ECF Nos. 31-4 at 10 and 31-3 at 7).  On March 29, 2018, Moreno filed his complaint against Defendants, alleging deliberate indifference and retaliation around August 2017.  (ECF No. 5 at 1).

According to Moreno's medical records, during the roughly two-year period between him meeting Defendant Adamson and filing his complaint, Moreno was seen by NDOC medical providers on at least fourteen separate dates and prescribed medication for his back pain and neuropathy at least seven times.  (*See* ECF Nos. 31-3 and 31-4).  Further, Moreno received multiple MRIs and x-rays during the same time period.  (*See* ECF Nos. 31-5 at 5-7 and 31-6 at 2-4).

### C. Defendants' Motion for Summary Judgment

On March 12, 2020, Defendants filed a motion for summary judgment (ECF Nos. 29, 31).  Defendants argue they are entitled to summary judgment because Defendants were not deliberately indifferent to Moreno, and alternatively, Defendants are entitled to qualified immunity and discretionary immunity.  (*Id.* at 11-20).  Moreno opposed the motion, (ECF No. 37), and Defendants replied (ECF No. 38). The recommended disposition follows.

## II. LEGAL STANDARD

Summary judgment should be granted when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive law will identify which facts are material.  A dispute is "genuine" only where a reasonable jury could find for the nonmoving party.  *Id.*  Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).

Summary judgment proceeds in burden-shifting steps.  A moving party who does

not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III.   DISCUSSION

#### A.   Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual

7

punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 106.

Courts in this Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell*, 763 F.3d at 1066 (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence

at one end and purpose or knowledge at the other . . . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted) (*see Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) ("[M]ere malpractice, or even gross negligence" in the provision of care fails to state a deliberate indifference claim).

Similarly, an "isolated exception" to an inmate's "overall treatment" does not state a deliberate indifference claim. *Jett*, 439 F.3d at 1096. Further, a difference of opinion between a physician and a prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference. *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986). Instead, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012) (overruled, in part, on other grounds by *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014)) (quoting *Jackson*, 90 F.3d at 332). A "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference." *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 406-07 (9th Cir. 1985) (finding that the failure of prison authorities to respond to cumulative, repeated demands for surgery did not itself constitute deliberate indifference).

Defendants argue they are entitled to summary judgment on the deliberate indifference claim with respect to both defendants because the evidentiary record shows Defendant Adamson took proper and diligent care of Moreno. (ECF No. 29 at 9-14). Defendants further argue no causal connection exists between any action taken by Aranas and any harm suffered by Moreno. (*Id.*)

Based on the evidence before the court, and in viewing all facts and drawing all inferences in the light most favorable to Moreno, the court finds summary judgment should be granted in favor of both defendants on the deliberate indifference claim. Defendants have, on the basis of authenticated evidence, shown that the record

forecloses the possibility of a reasonable jury finding in Moreno's favor. *Celotex*, 477 U.S. at 323. Accordingly, the burden shifts to Moreno to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.*, 627 F.3d at 387. Moreno has failed to carry his burden.

First, it is undisputed that Moreno's chronic back problems constitute a serious medical need. *Colwell*, 763 F.3d at 1066. Thus, the only issue is whether Plaintiff has come forward with some evidence to establish a genuine issue of fact that Defendants knew of and disregarded "an excessive risk to [Moreno's] health and safety." *Toguchi*, 391 F.3d at 1057.

Moreno has failed to come forward with any evidence to establish a genuine dispute of fact on that issue. Instead, Moreno simply asserts several arguments as to why his claim should proceed. These arguments boil down to the following relevant allegations: (1) Defendants conspired with SNG and others to prevent Moreno from receiving the proper surgical procedure; (2) Moreno was subjected to undue delay in surgery as a result of Defendants' use of the URP procedure; (3) Defendant Adamson pursued an ineffective treatment strategy; and (4) Adamson's delays and ineffective treatment strategy resulted in Moreno suffering unduly, constituting an unnecessary and wanton infliction of pain. (*See* ECF No. 37.) Moreno's opposition included various medical kites, grievance forms, and inmate request forms submitted as evidence. (*See id.*) However, Moreno's evidence does not create a genuine dispute as to whether Defendants were deliberately indifferent to him. None of those items establish that either Adamson or Aranas were medically indifferent to Moreno's medical condition.

As to the evidence submitted by Defendants, medical records show Defendant Adamson treated Moreno with Kenalog and Lidocaine injections and provided him with two pain medications during their first meeting together, despite Adamson's concerns about Moreno's relationship with narcotics. (ECF No. 31-4 at 12). Thereafter, Moreno continued to receive earnest care from Adamson, as evidenced by Moreno being seen at least fourteen times in two years prior to his suing Adamson, the many prescription and

other medications provided to Moreno by Adamson, Adamson's treatment of Moreno's back with injections and balm, and Adamson's repeated deference to experts to ensure Moreno received multiple MRIs and x-rays. (*See* ECF Nos. 31-3 and 31-4; *see also* ECF Nos. 31-5 at 5-7 and 31-6 at 2-4).

By contrast, Moreno has provided no evidence to contradict his medical records. Rather, he simply argues that Adamson conspired with others to fashion a remedy provided by outside provider SNG; that the use of the Utilization Review Panel ("URP") for outside treatment constituted a delay in his medical care; that Adamson pursued an ineffective treatment strategy; and that the delays and ineffective treatment resulted in Moreno suffering severe pain needlessly. However, these arguments are not evidence for purposes of creating an issue of fact and are contradicted by the evidence.

Although Moreno claims Defendants conspired to interfere with his medical care, the record shows that Adamson repeatedly deferred to experts and outside organizations to ensure Moreno received appropriate care. Moreno has provided no evidence that Defendants conspired to interfere with his medical care in any way, and thus he cannot establish a genuine issue of fact exists regarding Defendants' alleged interference.

Further, Defendants are bound by AR § 613.02(1)(A), which requires all outside medical treatment to have prior approval from the URP. Defendants' adherence to institutional protocols does not show the type of subjective mental component necessary to establish deliberate indifference. *See Farmer*, 511 U.S. at 835 (deliberate indifference is "a state of mind more blameworthy than negligence," requiring "'more than ordinary lack of due care for the prisoner's interests or safety.'") (quoting *Whitley v. Albers*, 475 U.S. 312, 319). Moreover, a "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference." *Shapley*, 766 F.2d at 407. Moreno has provided no evidence his surgery was delayed at all and thus he cannot establish a genuine issue of fact exists regarding Defendants' use of the URP.

During the time he was treated by Defendant Adamson, prior to the filing of his complaint, Moreno was seen by NDOC medical providers on at least fourteen separate

dates and prescribed medication for his back pain and neuropathy at least seven times. (*See* ECF Nos. 31-3 and 31-4). Furthermore, Moreno received multiple MRIs and x-rays during the same timeframe. (*See* ECF Nos. 31-5 at 5-7 and 31-6 at 2-4). Moreno's bare allegations that Adamson's treatment strategy was ineffective are insufficient to establish a genuine dispute regarding deliberate indifference. Instead, Moreno "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988. Moreno has failed to produce any evidence that could make such a showing.

While Moreno is plainly dissatisfied with the medical treatment he received from Defendants, Moreno has failed to provide evidence creating a genuine dispute whether that medical treatment was appropriate. *See Taplet v. Brooks*, 432 Fed. Appx. 697, 698 (9th Cir. 2011) (finding that Plaintiff's own allegations, unsupported by expert testimony, were insufficient to create a dispute of fact over whether care was medically acceptable) (citing *Clouthier v. Cnty. Of Contra Costa*, 591 F.3d 1232, 1252 (9th Cir. 2010) (overruled, in part, on other grounds by *Castro v. Cnty. Of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)). Therefore, Moreno's opinions about the care he received from Defendants are not evidence that Defendants' care was improper. A mere difference of opinion between a physician and a prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference. *Wilhelm*, 680 F.3d at 1122. Consequently, Moreno has provided no evidence that Adamson consciously disregarded a known risk to Moreno's health or safety. Thus, Moreno cannot establish a genuine dispute regarding whether Adamson pursued an ineffective treatment strategy.

Further, because Moreno cannot show Adamson delayed his medical care or pursued an ineffective treatment strategy, Moreno cannot show that Adamson caused Moreno an unnecessary and wanton infliction of pain. Moreno has provided no evidence Adamson had a blameworthy state of mind or that Adamson let him suffer needlessly. *See Farmer*, 511 U.S. at 835. Indeed, the record shows Adamson tried to alleviate

Moreno's pain and suffering in good faith. Thus, Moreno cannot establish that a genuine dispute remains as to whether Adamson's alleged delays and purported ineffective treatment strategy caused him unnecessary pain.

Moreover, as to Defendant Aranas, there is no evidence to establish that Aranas was involved in Moreno's treatment in any way. Rather, the sole piece of evidence Moreno has provided indicating the involvement of Aranas in this matter in any capacity whatsoever is Aranas's denial of Moreno's second level grievance form. (ECF No. 29-4 at 3). Responding to Moreno's grievance is insufficient to establish that Aranas was indifferent to Moreno's medical needs.

Accordingly, the court recommends Defendants' motion for summary judgment (ECF No. 29) be granted in favor of both defendants on the Eighth Amendment deliberate indifference to Moreno's serious medical needs claim.

### B.     First Amendment Retaliation under State and Federal Law

Next, Defendants seek summary judgment on the First Amendment retaliation claim and a parallel state action under the Nevada Constitution Article I, § 9. (ECF No. 29 at 9-11.) Prisoners have a general right to be free from retaliatory punishment. *Shepard v. Quillen*, 840 F.3d 686, 693 (9th Cir. 2016) (citing *Rhodes v. Robinson*, 408 F.3d 559, 569 (9th Cir. 2005)). "Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). Indeed, the Ninth Circuit has stated "the mere *threat* of harm" may be enough to amount to a violation, "regardless of whether it is carried out because the threat itself can have a chilling effect." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (emphasis in original). "'[A] threat of retaliation is sufficient injury if made in retaliation for an inmate's use of prison grievance procedures.'" *Id.* (citation omitted).

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "Within the prison context, a viable

claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68. The adverse action must be such that it "would chill or silence a person of ordinary firmness from future First Amendment activities." *Watison*, 668 F.3d at 1114 (quoting *Rhodes*, 408 F.3d at 568).

Defendants argue Adamson could not have retaliated against Moreno because Adamson was largely unaware of Moreno's grievances and did not personally respond to any of them. (ECF No. 29 at 10-11). Moreover, Defendants argue no causal connection exists between any action taken by Aranas and any harm suffered by Moreno. (*Id.*)

Based on the evidence before the court, and in viewing all facts and drawing all inferences in the light most favorable to Moreno, the court finds summary judgment on the retaliation claim should be granted in favor of both Defendants. Defendants' evidence forecloses the possibility of a reasonable jury finding in favor of Moreno. *Celotex*, 477 U.S. at 323. Thus, the burden shifts to Moreno to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.*, 627 F.3d at 387. Again, Moreno has failed to meet his burden.

Moreno's relevant arguments include the following: (1) Defendants retaliated against Moreno by delaying or interfering with his medical care because he required significant, expensive care; and (2) Defendants retaliated against Moreno by delaying or interfering with his medical care because he filed grievances and medical kites. (*See* SEC No. 37). However, Moreno is unable to create a triable issue as to whether Defendants retaliated against him.

Much of the delay in medical care Moreno alleges was intentional retaliation was, in fact, simple adherence to NDOC regulations like AR § 613. Approved institutional regulations undoubtedly have a legitimate penological purpose and thus compliance with those regulations is not retaliation. *See Rhodes*, 408 F.3d at 567-68. Similarly,

14

Adamson's failure to provide Moreno with specialist-recommended medications for purposes not authorized by NDOC had a legitimate penological purpose because NDOC has a keen interest in keeping powerful neurological drugs out of circulation in its facilities. *See id.* Therefore, such failure does not amount to retaliation. Moreover, the record shows Moreno continued to receive diligent and attentive medical care long after the filing of his complaint in March 2018, and that Moreno continued to use prison grievance procedures both before and after the filing of his complaint.[4] Because Moreno cites no facts and offers no evidence that would create a genuine dispute, he consequently fails to shift his burden back to Defendants.

Accordingly, the court recommends Defendants' motion for summary judgment (ECF No. 29) be granted in favor of both Defendants on the First Amendment retaliation claim and the parallel state retaliation claim under the Nevada Constitution Article I, § 9.[5]

## IV.  CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends Defendants' motion for summary judgment (ECF No. 29) be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

---

[4] Moreno's opposition included various medical kites, grievance forms, and inmate request forms. (*See* ECF No. 37.) Indeed, Moreno's own evidence, in addition to Defendants' evidence, establishes that he was not chilled from redressing his grievances, despite Moreno's contentions to the contrary.

[5] Where the court determines a plaintiff's allegations fail to show a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Here, Moreno is unable to establish a violation of his rights under either the United States or the Nevada constitutions. Accordingly, there is no need for the court to address Defendants' arguments related to qualified immunity or discretionary immunity.

15

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 29) be **GRANTED**; and

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly.

**DATED**: July 9, 2020.

_____
**UNITED STATES MAGISTRATE JUDGE**